## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

RICKY MASON,                                    Case No. 19-cv-2597 (JRT/KMM)

                            Plaintiff,

v.

                                                **MEMORANDUM OPINION AND ORDER**
                                                **ADOPTING REPORT AND**
NANCY JOHNSTON, KEVIN MOSER, TERRY              **RECOMMENDATION OF MAGISTRATE**
KNEISEL, STEVE SAYOVITZ, BLAKE CAREY,                        **JUDGE**
RANDY P. GORDON, JORDAN GOODMAN,
and JIM BERG,

                            Defendants.

---

Ricky Mason, MSOP, 1111 Highway 73, Moose Lake, MN 55767, *pro se*;

Anthony R. Noss, **MINNESOTA ATTORNEY GENERAL'S OFFICE**, 445 Minnesota Street, Suite 1100, St. Paul, MN 55101, for defendants.

Defendants object to the Magistrate Judge's Report and Recommendation ("R&R") denying, in part, Defendants' Motion to Dismiss. The Magistrate Judge found that Ricky Mason stated plausible claims alleging as-applied Constitutional violations with respect to the Minnesota Sex Offender Program's visitation and telephone-use policies. After conducting a de novo review, the Court finds that Mason pleaded sufficient factual matter to state plausible First Amendment freedom of association, Fourteenth Amendment due process, and § 1983 claims. Accordingly, the Court will overrule Defendants' Objections,

-1-

adopt the Magistrate Judge's R&R, and deny in part and grant in part Defendants' Motion to Dismiss.

## BACKGROUND

### I.    FACTUAL BACKGROUND

There are no objections to the factual statements contained in R&R, which the Court adopts and summarizes here.

Mason is a civilly committed client at the Minnesota Sex Offender Program ("MSOP") facility in Moose Lake, Minnesota.  (Compl. ¶¶ 6, 11, Sept. 25, 2019, Docket No. 1.)  Clients are allowed visits and to use the telephone subject to MSOP policy regulations. (*Id.* ¶ 34.)   Relevant here is the application of the policies with respect to Cara Lea Keinanen, a former MSOP employee who stopped working there sometime before July 15, 2016.  (*Id.* ¶ 10.)  Mason considers Keinanen to be an important support person who keeps him grounded, helps his mother understand his situation, and encourages him during his treatment, so he wishes to visit and speak with her.  (*Id.* ¶¶ 24–25.)

Per MSOP policy, former employees are not permitted to be on a client's visiting list for a year following separation from employment, so Mason waited until July 2017 to request a visit with Keinanen.  (*Id.* ¶ 9.)  This request was denied due to "[s]ecurity [i]ssues."  (*Id*. ¶ 10.)  Mason challenged the visitation denial, to which Kevin Moser, facility director at Moose Lake, responded on August 3, 2017, informing Mason that Keinanen's "denied status" would remain in effect.  (*Id.* ¶¶ 7, 11.)  Then, on August 14, 2017, Mason

received a Notice of Client Telephone Block ("NCTB"), signed and approved by Moser, which stated the Keinanen's number would be blocked for one year, even though Mason and Keinanen had been speaking several times a week since 2016.  (*Id.* ¶¶ 12, 29.)  The notice stated that her calls would be blocked because they were "[i]nterfering with the therapeutic treatment program process."  (*Id.*)  Two days later, Mason received a second NCTB, again signed and approved by Moser, which repeated that Keinanen's number would be blocked.  (*Id.* ¶ 13.)  On the same day, Mason filed another grievance, which Moser denied later that day, stating again that her number "will remain blocked for security and interfering with the therapeutic treatment program process."  (*Id.* ¶ 14.)  Between August 23, 2017 and September 18, 2017, Mason received seven additional NCTBs.  (*Id.* ¶¶ 15–21.)

On September 19, 2017, Mason received a Behavioral Expectations Report ("BER"), signed and approved by Blake Carey, a MSOP unit director, and Randy Gordon, MSOP's Behavioral Expectations Unit supervisor, which stated that Mason had "failed to follow the Client Telephone Use Policy by calling an MSOP staff member that has separated from employment."  (*Id.* ¶ 22.)  Because of the BER, Mason was restricted to his room, could not participate in off-unit activities, and could not have any contact visits.  (*Id.* n.2.)  However, for reasons unexplained, MSOP staff then allowed Mason and Keinanen to begin speaking by phone a few weeks later.  (*Id.* ¶ 29.)

Yet, in February 2019, MSOP once again blocked Keinanen's phone number.  (*Id.*) Mason submitted a grievance to MSOP's Office of Special Investigations ("OSI"), asking why her number had been blocked.  (*Id.* ¶ 23.)  In response, OSI simply referred Mason to MSOP's policy regarding client telephone use.  (*Id.*)  Thus, Mason submitted another grievance to Moser, to which Moser replied that "[t]here are ongoing concerns about your contact with past staff."  (*Id.* ¶ 24.)

On March 18, 2018, Mason wrote to Nancy Johnston, MSOP's chief executive officer, to voice his concerns regarding Keinanen's number being blocked.  (*Id.* ¶ 25.) Johnston responded eleven days later, stating that MSOP policy "does not require the facility director [Moser] to provide a specific rationale and it may in fact be inappropriate to do so."  (*Id.* ¶ 26.)  Johnston also noted that Mason had not fully taken advantage of or followed appropriate MSOP grievance procedures.  (*Id.*)

In response, Mason sent Moser a Grievance Narrative on April 10, 2019, which summarized Mason's repeated problems trying to communicate with Keinanen or have her visit.  (*Id*. ¶ 27.)  Moser dismissed Mason's grievance on April 15, stating that "MSOP policy permits the facility director to block numbers of staff who have been separated. You were involved in an inappropriate relationship with this staff.  When it was reported that you had ongoing phone communication with this separated staff, an additional phone block was implemented."  (*Id*. ¶ 28.)   As a result, Mason submitted another

grievance to Johnston on April 19, 2019, to which Johnston and Jim Berg, MSOP's deputy director, responded by dismissing it.  (*Id*. ¶¶ 29–30.)

On June 10, 2019, Mason wrote to Johnston, complaining again about the continued blocks on his communications with Keinanen and detailing his numerous attempts to file grievances according to MSOP procedures.  (*Id*. ¶ 32.)  In particular, Mason objected to Moser's allegation that Mason had been involved in an inappropriate relationship with Keinanen.  (*Id*.)  He also asked Johnston to explain why Keinanen's number was being blocked, as Moser had not provided specific reasons to justify the block.  (*Id*.) Johnston replied, without further explanation, that Moser had the authority to block Keinanen's number and that she supported the decision.  (*Id.* ¶ 33.)

## II.    PROCEDURAL BACKGROUND

Mason, proceeding pro se, filed a Complaint, alleging 42 U.S.C. § 1983 claims against Defendants for violating rights guaranteed by the First and Fourteenth Amendments.  (*Id.* ¶ 2.)  Defendants filed a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6).  (Mot. to Dismiss, Oct. 24, 2019, Docket No. 11.)  On July 27, 2020, the Magistrate Judge issued an R&R, denying in part and granting in part Defendants' Motion to Dismiss.  (R&R at 37–38, July 27, 2020, Docket No. 23.)  The Magistrate Judge recommended denying Defendants' Motion to Dismiss with respect to Mason's claims alleging a violation of his right to associate with Keinanen via phone and contact visits, a violation of his right to procedural due process with respect to the

-5-

telephone-use policy, and his § 1983 claims against Carey and Gordon.  (*Id.* at 17, 21, 32–33.)

On August 10, 2010, Defendants filed Objections to the R&R.  (Objs., Aug. 10, 2020, Docket No. 24.)  Defendants argue that Mason's freedom of association does not extend to his relationship with Keinanen, that he is precluded from doing so because he was a member of a class that unsuccessfully challenged the same MSOP policies, and that MSOP provides adequate procedures to satisfy due process.  Defendants also assert that Mason fails to state a plausible claim against Carey or Gordon.

## ANALYSIS

### I.  STANDARD OF REVIEW

Upon the filing of an R&R by a magistrate judge, "a party may serve and file specific written objections to the proposed findings and recommendations."  Fed. R. Civ. P. 72(b)(2); *accord* D. Minn. LR 72.2(b)(1).  "The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to."  Fed. R. Civ. P. 72(b)(3); *accord* D. Minn. LR 72.2(b)(3).  "The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions."  Fed. R. Civ. P. 72(b)(3); *accord* D. Minn. LR 72.2(b)(3).

### II.  MOTION TO DISMISS

In reviewing a complaint under a Rule 12(b)(6) motion to dismiss, the Court considers all facts alleged in the complaint as true and construes the pleadings in a light most favorable to the non-moving party.  *See, e.g., Bhd. of Maint. of Way Emps. v. Burlington N. Santa Fe R.R.*, 270 F.3d 637, 638 (8ᵗʰ Cir. 2001).  To avoid dismissal, a complaint must include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  That is, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

### A.  FIRST AMENDMENT

The First Amendment protects an individual's freedom of association, which includes "choices to enter into and maintain certain intimate human relationships." *Roberts v. U.S. Jaycees*, 468 U.S. 609, 618 (1984).  While the Supreme Court has not delineated every type of relationship afforded constitutional protection, it has noted such protection extends to those relationships that "presuppose 'deep attachments and commitments of the sort that involve necessarily few other individuals with whom one shares not only a special community of thoughts, experiences, and beliefs but also distinctively personal aspects of one's life.'" *Bd. of Dirs. of Rotary Int'l v. Rotary Club of Duarte*, 481 U.S. 537, 545 (1987) (quoting *Roberts*, 468 U.S. at 620.))

On one end of the spectrum are family relationships, which have the most protection, and on the other end are large business enterprises, which likely have no protection. *See Roberts*, 468 U.S. at 620. In the middle, "lies a broad range of human relationships" that must be analyzed on a case-by-case basis.[1] *Id.* Relevant factors to consider include "size, purpose, policies, selectivity, congeniality, and other characteristics that in a particular case may be pertinent." *Id.* at 620–21 (holding that the Jaycees were neither small nor selective, especially as strangers were often involved in the relationship). The Eighth Circuit has recognized that relationships with friends, acquaintances, and dating partners are not necessarily unprotected. *See Vieira v. Presley*, 988 F.2d 850, 853 (8th Cir. 1993).

The Court must decide whether the relationship between Mason and Keinanen warrants constitutional protection.[2] Mason states that Keinanen is an integral support

---

[1] Defendants argue that such analysis is not required in this case, as Mason has absolutely no freedom to associate because he is civilly committed, which is akin to being a prisoner. Yet, the Supreme Court has stated that prisoners have some right to association. *See Overton v. Bazzetta*, 539 U.S. 126, 131 (2003). Further, the Eighth Circuit has explicitly held that MSOP clients are not directly analogous to prisoners. *Serna v. Goodno,* 567 F.3d 944, 948 (8th Cir. 2009); *Senty-Haugen v. Goodno*, 462 F.3d 876, 886 (8th Cir. 2006) (stating that civil detainees are entitled to more considerate treatment than prisoners). Thus, Defendants' argument is unavailing.

[2] Because Mason is civilly committed, Defendants ask the Court to conduct a modified *Turner* test instead of applying the *Roberts* factors. *See, e.g.*, *Ivey v. Mooney*, No. 05-CV-2666 JRT/FLN, 2008 WL 4527792, at *10 (D. Minn. Sept. 30, 2008) (applying the factors from *Turner v. Safley*, 482 U.S. 78 (1987) and determining that MSOP policy regulations impinging upon a constitutional right can survive scrutiny if they are reasonably related to a legitimate therapeutic or institutional interest). In certain cases, it may be possible to conduct this test at the motion to dismiss stage, as when the contested regulations and policy interests at stake are clearly ascertainable. *See, e.g.*, *Semler v. Ludeman*, No. 09-CV-0732 ADM/SRN, 2010 WL 145275, at *9 (D. Minn. Jan. 8, 2010) (performing the modified *Turner* test at an early stage because the regulations and policies were clearly developed in the record). Here, however, MSOP has only asserted that its

person who is necessary for him to build and maintain a therapeutic foundation. She keeps him grounded, helps his mother understand his situation, and encourages him without judging. Further, they have talked over many years. As such, the Court finds that the relationship is plausibly selective, singular, and involves thoughts, experiences, and beliefs that are distinctively personal aspects of one's life, thus plausibly protected. *See Roberts*, 468 U.S. at 620–21. Accordingly, as it is undisputed that MSOP prohibited Mason from associating with Keinanen via telephone or visits, the Court finds that Mason states a plausible claim that Defendants violated his First Amendment right to associate.

## B.   ISSUE PRECLUSION

Issue preclusion "bars relitigation of an issue where (1) the party sought to be precluded in the second suit was a party, or privy to a party, in the prior suit; (2) the issue sought to be precluded is the same as the issue involved in the prior action; (3) the issue was actually litigated in the prior action; (4) the issue was determined by a valid and final judgment; and (5) the determination in the prior action was essential to the judgment. *Morse v. Comm'r of Internal Revenue Serv.*, 419 F.3d 829, 834 (8th Cir. 2005) (quotations omitted).

Mason was a member of a class of MSOP plaintiffs who alleged that MSOP policies, including those related to visitation and telephone use, impinged upon their freedom of

---

restrictions were related to "security issues" or "interfering with therapeutic treatment," but nothing more concrete. As such, it is impossible to determine at this point whether MSOP's policies were reasonably related to legitimate therapeutic or institutional interests.

association.  These claims were summarily dismissed.  *See Karsjens v. Piper*, 336 F. Supp. 3d 974, 994 (D. Minn. 2018).  Yet, while the *Karsjens* court did state that it was ruling on "Plaintiffs' First Amendment rights as applied to the Class as a whole," it did not consider or determine the constitutionality of the policies as applied to specific individuals.  *Id.*  In fact, the *Karsjens* court explicitly noted that "the Court's conclusions on the viability of Plaintiffs' freedom-of-speech and association claims in this case are not meant to foreclose committed individuals at the MSOP from advancing individual freedom-of-speech and association claims in separate litigation."  *Id.* n.13.  Here, Mason only challenges the MSOP policies as applied to him; he does not make any claims related to the MSOP class as a whole.  Accordingly, the Court finds that Mason is not precluded from asserting his as-applied claims in this action.

### C.  PROCEDURAL DUE PROCESS

"To set forth a procedural due process violation, a plaintiff, first, must establish that his protected liberty or property interest is at stake." *Schmidt v. Des Moines Pub. Sch.*, 655 F.3d 811, 817 (8th Cir. 2011) (quotation omitted).  If a plaintiff does have a protected liberty or property interest, then the Court "consider[s] what process is due by balancing the specific interest that was affected, the likelihood that the [MSOP] procedures would result in an erroneous deprivation, and [MSOP's] interest in providing the process that it did, including the administrative costs and burdens of providing

additional process." *Senty-Haugen v. Goodno*, 462 F.3d 876, 886 (8th Cir. 2006) (citing

*Mathews v. Eldridge*, 424 U.S. 319, 332–35 (1976)).

The First Amendment protects Mason's freedom of association, thus satisfying the

first step of his procedural due process claim. Correspondingly, Mason is entitled to some

degree of due process at the second step.[3]  However, at this stage, further inquiry is not

possible: the developed record does not include sufficient details outlining MSOP's

telephone-use policy, how it is generally applied, or if Mason's grievances were afforded

proper consideration.  While Mason may not be able to withstand further dispositive

motions after such details have been fleshed out during discovery, he has sufficiently

pleaded facts that allow the Court to draw the reasonable inference that Defendants did

not provide adequate notice and opportunity.  Accordingly, the Court finds that Mason

states a plausible claim that Defendants violated his Fourteenth Amendment right to due

process.

### D.  SECTION 1983 CLAIMS AGAINST CAREY AND GORDON

To successfully plead a § 1983 civil rights claim, a plaintiff must plead facts showing

an individual's personal involvement or responsibility in the alleged constitutional

wrongdoing.  *Ellis v. Norris,* 179 F.3d 1078, 1079 (8th Cir. 1999).  Here, Mason alleges that

---

[3] Defendants argue that the Court need not even consider what process is due, as Minnesota Statute section 246b.03, subdiv. 3 provides an adequate post-deprivation remedy, which is enough by itself.  This argument is unavailing, for the statute only demands that the executive director establish proper grievance policies and procedures to resolve complaints.  Whether Johnston did so is precisely the issue in dispute.

both Carey and Gordon approved and signed the BER.  Mason further alleges that the BER

was issued for a failure "to follow the Client Telephone Use Policy by calling [Keinanen]."

Because of the BER, Mason was restricted to his room and could not have any contact

visits.  As such, Mason has pleaded facts alleging that both Carey and Gordon personally

instituted MSOP policies, which had the effect of curtailing his freedom to associate with

Keinanen.  Accordingly, the Court finds that Mason states plausible § 1983 claims against

Carey and Gordon.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY**

**ORDERED** that:

1. Defendants' Objections to the Report and Recommendation [Docket No. 24] are **OVERRULED**;

2. The Magistrate Judge's July 22, 2020 Report and Recommendation [Docket No. 23] is **ADOPTED**;

3. Defendants' Motion to Dismiss [Docket No. 11] is **DENIED in part and GRANTED in part**.

DATED:  September 30, 2020
at Minneapolis, Minnesota.

_____
JOHN R. TUNHEIM
Chief Judge
United States District Court

-12-